**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GENERAL ELECTRIC CAPITAL
CORPORATION,
       *Petitioner-Appellant,*

    v.

FUTURE MEDIA PRODUCTIONS INC.,
       *Respondent-Appellee.*

No. 07-55694

D.C. No.
BK-SV-06-10170-
GM

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States Bankruptcy Court
for the Central District of California
Geraldine Mund, Bankruptcy Judge, Presiding

Argued and Submitted
June 9, 2008—Pasadena, California

Filed July 3, 2008
Amended August 7, 2008
Second Amendment October 24, 2008

Before: Stephen S. Trott, Sidney R. Thomas, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Trott

14877

## COUNSEL

Michael K. Maly, Hannah L. Blumenstiel, Winston & Strawn LLP, San Francisco, California, for the appellant.

Harry D. Hochman, Pachulski Stang Ziehl & Jones LLP, Los Angeles, California, for the appellee.

## ORDER

The Amended Opinion filed on August 7, 2008, is hereby amended as follows: on slip Opinion page 9982, add the following footnote at the end of the first full paragraph:

> Section 158(d)(2) provides that we have discretionary jurisdiction over appeals of non-final orders of the bankruptcy court upon proper certification of that court or all appellants and appellees. On May 10, 2007, a motions panel of this court granted permission to appeal. Section 158(d)(2) itself presents no issues in this case.

No future petitions for rehearing will be entertained.

## OPINION

TROTT, Circuit Judge:

General Electric Capital Corporation ("GECC"), an oversecured creditor, appeals the bankruptcy court's order denying it default interest and attorneys' fees. GECC argues that the bankruptcy court improperly applied a per se rule against default interest to the facts of this case. We have jurisdiction pursuant to 28 U.S.C. § 158(d)(2)(A), and we reverse and remand to the bankruptcy court with instructions to apply the rule adopted by the majority of federal courts and to then determine if an award of attorneys' fees is proper.[1]

---

[1] Section 158(d)(2) provides that we have discretionary jurisdiction over appeals of non-final orders of the bankruptcy court upon proper certification of that court or all appellants and appellees. On May 10, 2007, a motions panel of this court granted permission to appeal. Section 158(d)(2) itself presents no issues in this case.

## BACKGROUND

GECC and Future Media Productions, Inc. ("Debtor") were parties to a Loan and Security Agreement ("loan agreement"), dated August 13, 2004. The loan agreement included a $10.5 million, 42-month term loan, as well as a $5 million revolving line of credit. Interest under the loan agreement accrued prior to default ("pre-default rate") at the Index Rate plus 1.5% per annum, with additional interest of 2% per annum after default ("default rate"). The loan agreement, governed by New York law, obligated Debtor to pay attorneys' fees and costs incurred by GECC in connection with any dispute relating to the loan agreement. All advances under the loan agreement were secured by a perfected, first priority security interest in substantially all of Debtor's assets.

On March 31, 2005, an event of default occurred, and the loans began to bear interest at the default rate. Additional events of default occurred thereafter. These difficulties, and others, led Debtor to conclude that an orderly liquidation of its assets would best serve its interests and those of its creditors. On February 14, 2006, Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. After filing its bankruptcy petition, Debtor had a need for cash to wind down its operations and to prepare for the sale of its assets. GECC agreed to Debtor's use of GECC's "cash collateral" subject to the terms of a stipulation ("the stipulation") executed by GECC and Debtor on February 15, 2006. On February 16, 2006, Debtor filed a motion in the bankruptcy court requesting approval of the stipulation.

In the stipulation, Debtor represented that it had executed an agency agreement to sell its assets in an auction, which was guaranteed to produce at least $7,636,500 in net proceeds. Debtor conceded that it owed GECC about $5.4 million dollars including principal and interest under the loan agreement. Debtor conceded also that this obligation was payable to GECC and that the obligation was not subject to, nor

would Debtor assert, any defense of any kind to the obligation. The stipulation reserved the right of any other interested party to object to GECC's claim. Also, the stipulation permitted Debtor to continue to maintain a "lockbox" account into which it deposited its cash, including the proceeds of its asset sales, and which GECC periodically "swept" for the purposes of paying down Debtor's obligation.

On February 21, 2006, the bankruptcy court provisionally approved the stipulation and set a final hearing for March 3, 2006. On March 1, the Official Committee of Unsecured Creditors ("the Committee") was formed, and on March 2, the Committee objected to the stipulation. At the March 3 hearing, and a subsequent March 30 hearing, the bankruptcy court continued the final hearing on the stipulation. During that time, other issues arose between Debtor, the Committee, and another creditor, preventing GECC and the Committee from resolving their differences as to the stipulation.

On or about April 10, 2006, GECC and Debtor entered into an amended stipulation ("the amended stipulation"). In response, the Committee withdrew its original objection to the payment of asset sale proceeds to GECC, subject to its request for a ruling that GECC was not entitled to payment of interest at the default rate, or alternatively that GECC's right to interest at the default rate as part of its allowed claim would be determined by the court as if GECC had been paid in full through a confirmed plan of reorganization.

On April 25, 2006, the bankruptcy court held a hearing on approval of the amended stipulation. At that hearing, GECC's counsel proposed an interim solution to stop the accrual of interest on GECC's unpaid claim. The solution proposed that GECC would be paid in full, including interest at the default rate as specified in the loan agreement, and any dispute about default interest would be resolved at a later time. The parties agreed, and the court approved the proposal—allowing the default rate issue to be litigated independently. The Final

Cash Collateral Order was entered on May 4, 2006, and GECC was paid $5,728,584.20, representing the amount owed on its claims for unpaid principal and loan fees, interest at the contract rate including default interest since the first event of default occurred, plus all reimbursable expenses of GECC, consisting of all remaining auditor fees and legal fees through April 30, 2006.

On August 28, 2006, the Committee filed a motion in the bankruptcy court requesting a determination of the interest rate applicable to GECC's secured claim. The Committee asserted that the proper interest rate to be applied to GECC's oversecured claim was the pre-default rate rather than the default rate, and that GECC should return the amount it had collected over the pre-default rate ("the default rate differential") in the amount of $164,995. GECC opposed this motion and sought attorneys' fees, costs, and expenses in connection with this aspect of the controversy.

On November 15, 2006, the bankruptcy court entered an order concluding that GECC was entitled to interest at the pre-default rate and was not entitled to attorneys' fees or costs. The order required GECC to return the default rate differential to Debtor pursuant to our holding in *In re Entz-White Lumber and Supply, Inc.*, 850 F.2d 1338 (9th Cir. 1988). Additionally, the court denied GECC's request for attorneys' fees and costs on the ground that GECC was not the prevailing party. GECC appeals from the bankruptcy court's order.

## DISCUSSION

### A.   Standard of Review.

We review de novo a bankruptcy court's conclusions of law. *In re Salazar*, 430 F.3d 992, 994 (9th Cir. 2005).

### B.   Analysis.

[1] Bankruptcy Code § 506(b) provides that the claim of an oversecured creditor "shall be allowed . . . interest . . . and any

reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." 11 U.S.C. § 506(b). The parties do not dispute that GECC is an oversecured creditor entitled to interest. However, the parties do dispute the type of interest due to GECC. The Committee argues that the bankruptcy court correctly determined that GECC is entitled to collect interest only at the loan agreement's pre-default rate, whereas GECC argues that it is entitled to a presumption in favor of the loan agreement's default rate (an additional 2% interest), subject only to reduction based upon any equities involved.

That disagreement presents three issues for our consideration: 1) whether *Entz-White* applies to the case at bar; 2) if *Entz-White* does not apply, how the bankruptcy court should evaluate the viability of the contractual default interest rate on remand; and 3) whether GECC is entitled to attorneys' fees and costs under § 506(b).

## 1.    The Applicability of *Entz-White*.

[2] In *Entz-White*, we announced the rule that an oversecured creditor was not entitled to interest at the default rate where its claim was paid in full *pursuant to the terms of a Chapter 11 plan*. *Entz-White*, 850 F.2d at 1342.[2] In the case at bar, the bankruptcy court extended *Entz-White* to a claim that was paid in full as a result of a series of asset sales *outside of a Chapter 11 plan*. Because a Chapter 11 plan implicates provisions of the Bankruptcy Code that an asset sale outside of a plan does not, we respectfully conclude that the bankruptcy court's extension of *Entz-White* was error.

[3] Our analysis starts from a general premise recently articulated by the Supreme Court: "[c]reditors' entitlements in

---

[2]Soon after, we again applied the same rule in a case involving a Chapter 11 plan with substantially similar facts. *See In re Southeast Co.*, 868 F.2d 335, 338 (9th Cir. 1989).

bankruptcy arise in the first instance from the underlying sub-stantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 127 S. Ct. 1199, 1204-05 (2007). We read *Travelers* to mean the default rate should be enforced, subject only to the sub-stantive law governing the loan agreement, unless a provision of the Bankruptcy Code provides otherwise.

**[4]** In *Entz-White* we identified such a "qualifying or con-trary provision" of the Bankruptcy Code. There, the debtor's proposed treatment of the oversecured creditor's claim was presented in a Chapter 11 plan. A creditor's claim is consid-ered "impaired" for purposes of voting on a Chapter 11 plan unless the plan leaves the creditor's legal, equitable, and con-tractual rights unaltered, or the debtor "cures" any default that occurred prior to or during the bankruptcy case. *See* 11 U.S.C. § 1124(1)-(2). We have explained that the provision allowing "cures" under § 1124(2)(A) "authorizes a plan to *nullify all consequences* of default, including avoidance of default pen-alties such as higher interest." *Southeast Co.*, 868 F.2d at 338 (quoting *Entz-White*, 850 F.2d at 1342). Because the Code allows the debtor to "cure" defaults under a Chapter 11 plan, we permitted the debtor to nullify the interest owed at the default rate. *See id.* In the case before us today, however, there was never any question of whether the debtor needed to cure a default to render it unimpaired for voting on a Chapter 11 plan. Instead, GECC's oversecured claim was paid through a sale of assets governed by § 363, *outside the context of a Chapter 11 plan*. As a result, the facts of *Entz-White* are dis-tinguishable, and thus our per se rule from that case is inappli-cable.

The Committee asks us to consider two cases in which other courts have applied *Entz-White*'s rule against default interest in contexts outside of a Chapter 11 plan, *In re 433 South Beverly Drive*, 117 B.R. 563 (Bankr. C.D. Cal. 1990), and *In re Casa Blanca Project Lenders, L.P.*, 196 B.R. 140

(B.A.P. 9th Cir. 1996). We have carefully reviewed these cases, and find their analysis unpersuasive.

The bankruptcy court in *South Beverly*, and the Bankruptcy Appellate Panel ("BAP") in *Casa Blanca*, used our holding in *Entz-White* as the basis for their analysis. Both courts noted that "cure" as used in § 1124(2)(A) means a return to pre-default status, which nullifies all consequences of default including an obligation to pay default interest. *South Beverly*, 117 B.R. at 566; *Casa Blanca*, 196 B.R. at 143. Each court noted also that the concept of a "cure" is not exclusive to Chapter 11 plans; for example, trustees are permitted to cure defaults in executory contracts under 11 U.S.C. § 365. *South Beverly*, 117 B.R. at 566-67; *Casa Blanca*, 196 B.R. at 144. The next step of both courts' analyses, however, departed from and improperly extended our holding in *Entz-White*. Each court transposed the concept of "cure" from § 1124 and § 365 into 11 U.S.C. § 363. *South Beverly*, 117 B.R. at 566; *Casa Blanca*, 196 B.R. at 144-45 (citing *South Beverly*, 117 B.R. at 566-67). The problem with that transposition is that the text of § 363 does not mention "cure" and the procedures set out in that section do not implicate the concept of "cure." *See* 11 U.S.C. § 363. In short, there is no "cure" of events of default, de facto or otherwise, in the context of an asset sale. Because the bankruptcy court in *South Beverly* and the BAP in *Casa Blanca* improperly read "cure" into § 363, we do not find those decisions compelling.

**[5]** Because the Bankruptcy Code does not provide a "qualifying or contrary provision" to the underlying substantive law here, the bankruptcy court's extension of *Entz-White* to the loan agreement's default rate was error. Consistent with the Supreme Court's holding in *Travelers*, we hold that the parties' arms length bargain, governed by New York law, controls.

## 2.  The Bankruptcy Court, on Remand, Should Evaluate the Viability of the Default Rate Under the Rule Adopted by the Majority of Federal Courts.

**[6]** Because we have decided that *Entz-White* does not control the analysis in this case, we remand to allow the bankruptcy court to decide whether the default rate should apply under the rule adopted by the majority of federal courts. That rule simply stated is: The bankruptcy court should apply a presumption of allowability for the contracted for default rate, "provided that the rate is not unenforceable under applicable nonbankruptcy law." 4 *Collier on Bankruptcy*, ¶ 506.04[2][b][ii] (15th Ed. 1996) ("Most courts have allowed, or at least recognized a presumption of allowability for, default rates of interest, provided that the rate is not unenforceable under applicable nonbankruptcy law.").

This rule has been applied in many bankruptcy courts and in two of our sister circuits. *See, e.g.*, *In re Laymon*, 958 F.2d 72, 75 (5th Cir. 1992) (holding "that when an oversecured creditor's claim arises from a contract, the contract provides the rate of post-petition interest," subject to examination of "the equities involved in [the] bankruptcy proceeding"), *cert. den.*, 506 U.S. 917 (1992); *In re Terry Ltd. P'ship*, 27 F.3d 241, 243 (7th Cir. 1994) (noting the general rule that there is a "presumption in favor of the contract rate subject to rebuttal based on equitable considerations").[3]

GECC argues that if we decide to apply the new rule we need not remand because there is no evidence that the default rate differential of 2% is unreasonable. We reject the creation of a bright line rule that would accept 2% as an allowable default rate differential. We reject also GECC's assertion that the Committee waived any argument as to the enforceability

---

[3]The majority rule is consistent with the Supreme Court's decision in *Travelers* as well as with the plain language of 11 U.S.C. § 1123(d) as promulgated in the 1994 amendments to the Bankruptcy Code.

of the default rate under New York law. Because the Committee initially prevailed in convincing the bankruptcy court to reject the default rate in its entirety, there was no need for further argument. As a result, we remand the case for proper consideration as prescribed under the majority rule.

### 3. The Issue of Attorneys' Fees Should be Considered on Remand in Light of Remand on the Merits.

**[7]** The bankruptcy court concluded that GECC was not entitled to attorneys' fees, costs, and expenses incurred in the litigation to determine the applicability of the default rate because GECC did not prevail. Because we remand for a proper determination of the applicable interest rate, and because GECC may prevail on the merits, we remand also the issue of attorneys' fees, costs, and expenses allowable under 506(b).

### CONCLUSION

Because the bankruptcy court improperly applied our rule from *Entz-White* to the facts of this case, we reverse and remand with instructions to the bankruptcy court to apply the rule adopted by the majority of federal courts and to then determine if an award of attorneys' fees is proper.

**REVERSED** and **REMANDED.**